

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-09-00044-CR

_____

TERRI LYNN STINE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 21946

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

A jury found Terri Lynn Stine guilty of burglary of a habitation. After Stine pled true to the State's enhancement paragraph, the jury assessed punishment, and Stine was sentenced to thirty-five years of imprisonment in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Stine prays this Court set aside her conviction because the trial court erred in admitting extraneous offense evidence, in not empaneling a separate jury to determine her competence to stand trial, and because the evidence was legally and factually insufficient to support the conviction. We disagree with Stine and affirm the trial court's judgment.

## I. Factual and Procedural Background

Dedria Hartwell spent a Saturday afternoon helping clean her parents' home and yard. On returning home, Hartwell discovered that her single-wide trailer had been burglarized. A perpetrator had broken the glass on the back door to gain entry and had stolen several items, including a portable CD player with headphones, CDs, alarm clock, prom glass, a white jewelry box containing jewelry, candles, cordless telephone, a Tweety bird poster, and Hartwell's main purse bearing her wallet, checkbook, credit cards, driver's license, social security card, pearl-handled knife, and other miscellaneous items. Also, Hartwell's Jack Russell Terrier was missing and her satellite dish was broken. She called 9-1-1.

Hartwell discovered her debit card was used at a Kwik Chek gas station to purchase several items, and she passed the information to the police, who located her jewelry box in the Kwik Check

2

garbage can. Officers were also able to recover several other possessions from B.H., a juvenile who was forced to return the items after her mother noticed them. Hartwell's bank sent her a notification that a stolen check was made payable to the Dollar General Store shortly after the burglary.

Based on B.H.'s police interview claiming Stine broke into the trailer, a warrant for Stine's arrest was issued. On the day of the incident, B.H. was dating Stine's son Joshua. All three of them rode in a white Ford F-150 to visit Stine's brother. B.H. testified Stine stopped out in the country, walked to the back of a trailer, broke the glass on the back door, spent twenty to thirty minutes in the home, and came back to the truck with a dog and several other items. B.H. stated they went to a gas station and paid with a credit card or check that did not belong to them. They next stopped at the Dollar General Store and purchased cleaning supplies and other items with the stolen check. The dog was dropped off at Stine's brother's home.

Diane Garcia was working at Kwik Chek on the day of the incident. She testified Stine filled her gas tank, got a pack of batteries, a camera, lighters, and a carton of cigarettes. Stine did not have the debit card with her, so she asked B.H. to bring Hartwell's card to pay for the purchases. During her testimony, Garcia identified Stine as the person who used the credit card. Garcia recalled that Stine signed the credit card slip. A copy of the credit card transaction using Hartwell's card was introduced.

**II. Legal and Factual Sufficiency**

**A. The Hypothetically Correct Jury Charge**

Our analysis of whether the evidence is legally and factually sufficient is measured against the elements of the offense with the same kind of analysis as that applied in the test for a hypothetically correct jury charge for the case.[1] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. It is used to evaluate both legal and factual sufficiency. *Grotti*, 273 S.W.3d at 280–81.

Under a hypothetically correct charge in this case, the jury was required to find, beyond a reasonable doubt, that: (1) Stine; (2) intentionally or knowingly; (3) entered Hartwell's habitation; (4) without her effective consent; and (5) attempted to, or did in fact, appropriate Hartwell's property; (6) without her effective consent; (7) with intent to deprive her of the property. TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2003), § 31.03(a) (Vernon Supp. 2009).

---

[1]*Malik* controls "*even in the absence of alleged jury charge error.*" *Gollihar v. State*, 46 S.W.3d 243, 255 (Tex. Crim. App. 2001).

**B.      The Evidence Was Legally Sufficient to Support the Verdict**

The requirement of legal sufficiency confirms that a fact question was raised by the evidence. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). If the evidence in this case was insufficient to raise an issue of Stine's guilt, there was no issue for the jury's resolution. *Id.* When conducting a legal sufficiency analysis, we review all of the evidence in the light most favorable to the verdict and determine whether any rational jury could find the essential elements of burglary of a habitation as charged by the indictment beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Clewis*, 922 S.W.2d at 132–33; *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

The issue here is not whether a burglary occurred or whether property was removed from the victim's home without consent. Instead, Stine argues that the "State failed to establish that it was Appellant who entered the mobile home, and that it was the Appellant who stole the property from inside." Reviewing the evidence in a light most favorable to a finding of guilt reveals that B.H. testified Stine drove to the trailer, walked to the back door, broke it, and entered Hartwell's home. B.H. then claimed Stine committed theft by appropriating Hartwell's property and bringing that property back to the truck. A person acts with intent "with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct . . . ." TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003). In a burglary prosecution, the specific intent to commit theft may be

5

inferred from the circumstances. *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989); *Simmons v. State*, 590 S.W.2d 137, 138 (Tex. Crim. App. [Panel Op.] 1979). Stine was seen by Garcia using Hartwell's stolen debit card. The evidence further shows that Hartwell's house was locked, that a glass window was shattered, that Hartwell's property was taken, and that some of the property was returned to her by investigators. Based on all of the evidence, we find a rational jury could find that Stine intentionally or knowingly entered Hartwell's habitation and without Hartwell's consent appropriated the property with intent to deprive Hartwell of the property. The evidence was legally sufficient to support the jury's verdict.

## C. The Evidence Was Factually Sufficient to Support the Verdict

Unlike legal sufficiency review, we examine the evidence in a neutral light when assessing factual sufficiency and determine whether the proof of guilt is obviously weak as to undermine confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong and unjust. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Harris v. State*, 133 S.W.3d 760, 764 (Tex. App.—Texarkana 2004, pet. ref'd). A clearly wrong and unjust verdict is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Santellan v. State*, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997). Because factual sufficiency is an issue of fact, we are not free to reweigh the evidence and set aside the verdict merely because we feel a different result is more reasonable. *Clewis*, 922 S.W.2d at 135.

6

The majority of contrary proof came from the testimony of Stine's son Joshua. He testified the trio was traveling through the country to get to his uncle's house when the F-150 began having car trouble. B.H. got out of the truck with her purse and proclaimed she had to use the restroom. B.H. and Joshua went to the nearest trailer and knocked on the door. When no one answered, B.H. went to the back door, saw it was open, and entered. Joshua sat in the truck and waited. After ten minutes, B.H. returned with the purse she had originally taken in. She was not carrying other items. Joshua next testified the group made a few stops at different stores and claimed B.H. was making purchases with her mother's credit card. He stated he was taking Xanax supplied by B.H. so that they could both get high together that day. The defense also elicited the fact that B.H. believed she would not be charged if she testified against Stine.

Since we have determined the evidence raised issues for the jury's resolution, we will not sit as the thirteenth juror re-evaluating the weight and credibility of the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we give full play to the jury's responsibility to weigh the evidence, resolve conflicts in the testimony, and draw reasonable inferences from basic facts. *Johnson*, 23 S.W.3d at 7; *Clewis*, 922 S.W.2d at 133; *Bottenfield v. State*, 77 S.W.3d 349, 354 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Jackson*, 443 U.S. at 319).

In reviewing all of the evidence in a neutral light, we cannot say the evidence of Stine's guilt was greatly outweighed by Joshua's testimony exonerating his mother. We find nothing unjust or

shocking about the verdict, and conclude the evidence was factually sufficient to support it. As the fact-finder, the jury was free to disregard Joshua's testimony, and we must not reweigh the credibility of conflicting statements.

### III. The Trial Court Did Not Err in Allowing Evidence of Allegedly Extraneous Offenses

An extraneous offense is defined as any "act of misconduct . . . that is *not shown in the charging papers*." *Coffel v. State*, 242 S.W.3d 907, 909 (Tex. App.—Texarkana 2007, no pet.) (citing *Rankin v. State*, 953 S.W.2d 740 (Tex. Crim. App. 1996)). The statement must have reflected a crime or bad act to which Stine was connected. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993). Except in instances not applicable here, during the guilt/innocence phase, Texas Rule of Evidence 404(a) prohibits the use of character evidence "on the ground that it is generally laden with dangerous baggage of prejudice, distraction, time consumption and surprise." *Sims v. State*, 273 S.W.3d 291, 294 (Tex. Crim. App. 2008); *see* TEX. R. EVID. 404(a). Character evidence such as extraneous offense evidence "tends to confuse the issues," "weigh[s] too much with the jury and . . . overpersuade[s] them as to prejudge one with a bad general record and deny him a fair opportunity to defend" a particular charge. *Id.*

B.H.'s statement that she went with Stine to "Ace Hardware, and Terri Stine stole, like -- I don't know if it was bags of --" was interrupted by counsel's extraneous offense objection. The objection was sustained and the jury was instructed to disregard B.H.'s statement. However,

8

counsel's motion for mistrial was denied. We interpret Stine's argument, on this matter, to complain of the trial court's action in overruling the motion for mistrial.

Extraneous offenses "can be rendered harmless by an instruction to disregard . . . unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *see Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). In a majority of cases, the evidence complained of has little relevance to any material issue in the case, such that a prompt instruction to disregard will ordinarily cure any prejudicial effect. *State v. Boyd*, 202 S.W.3d 393, 402 (Tex. App.—Dallas 2007, pet. ref'd). However, an instruction to disregard will not cure the error of improperly inserted evidence of an extraneous offense when that evidence establishes exactly what the State is trying to prove. *Id.* at 402–03 (citing *Music v. State*, 135 Tex. Crim. 522, 121 S.W.2d 606, 609–10 (1938)).

While we employ a case-by-case analysis when deciding whether an instruction is curative, there are several nonexhaustive, nonexclusive factors this Court has adopted from its review of numerous Texas Court of Criminal Appeals cases. *Hardin v. State*, 20 S.W.3d 84, 93 (Tex. App.—Texarkana 2000, pet. ref'd). Included among the factors we consider in this case are: (1) the weight of other evidence supporting the decision; (2) nature and form of the question; (3) whether other evidence concerning the same subject has been admitted; (4) the particular instruction given,

9

and (5) the harm to the accused as measured by the severity of the sentence. *Id*. at 93–94; *see Sands v. State*, 64 S.W.3d 488, 493 (Tex. App.—Texarkana 2001, no pet.).

Here, we have already concluded that other evidence at trial was sufficient to support a finding of Stine's guilt. The State's question asking what happened after B.H., Joshua, and Stine left the trailer was not intended to elicit extraneous offense testimony. The State informed the trial court he was not even aware of this event. Although there was no other evidence presented to demonstrate Stine stole an item from Ace Hardware, her thirty-five-year sentence, considering a five-year to life imprisonment range, was less than the mid-range.[2] The trial court promptly sustained the objection and instructed the jury to disregard the statement of the witness. We conclude the court's instruction to disregard was curative. The trial court did not err in overruling the motion for a mistrial.

Next, B.H. testified Stine gave her some medicine for her headache which made her tired. Counsel lodged an extraneous offense objection. The court overruled the objection and motion for mistrial. B.H. stated she did not know what medication was given to her.

We review a trial court's admission of evidence for abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court abuses its discretion if its decision is outside the zone of reasonable disagreement. *McCarty*, 257 S.W.3d at 239 (citing *Zuliani*, 97 S.W.3d at 595). Unless there is clear abuse of the trial court's discretion, its ruling will not be reversed. *Id.*

---

[2]Stine's criminal record was admitted which included six additional (felony and misdemeanor) convictions.

10

B.H. initially did not know what medicine was given to her, but when re-called, was able to remember it was Advil or Tylenol. Because B.H. did not testify about an act of misconduct or a crime to which Stine was connected, her statement did not demonstrate that an extraneous offense occurred. *See Coffel*, 242 S.W.3d at 909. Thus, the trial court did not abuse its discretion in overruling counsel's objection.

## IV. The Trial Court Did Not Err in Finding No Evidence of Incompetency

Stine also objects that the trial court did not follow the proper procedure in determining whether she was competent to stand trial. A defendant is presumed competent to stand trial unless proved incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (Vernon 2006); *Gray v. State*, 257 S.W.3d 825, 827 (Tex. App.—Texarkana 2008, pet. ref'd). Stine was only incompetent to stand trial if she did not have sufficient present ability to consult with her lawyer to a reasonable degree of rational understanding or a rational and factual understanding of the proceedings against her. TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon 2006); *Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008).

"On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.004 (Vernon Supp. 2009). Evidence must indicate "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant" to raise a bona fide doubt in the mind of the trial

11

judge in order to prompt a court's informal inquiry concerning competency. *Gray v. State*, 257 S.W.3d at 829. "If after an informal inquiry the court determines that evidence exists to support a finding of incompetency, the court shall order an examination . . . to determine whether the defendant is incompetent to stand trial in a criminal case." TEX. CODE CRIM. PROC. ANN. art. 46B.005 (Vernon 2006). We review the totality of the facts surrounding the trial court's decision on the issue of competency for abuse of discretion. *Gray v. State*, 257 S.W.3d at 827 (citing *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999)).

By noon of the first day of trial, February 10, 2009, the trial court was concerned about Stine "being high." A drug test was ordered, and Stine tested positive for amphetamines and methamphetamine. The trial court then declared her bond insufficient and placed her in custody.

The first mention of competency from Stine's counsel occurred on Thursday, February 12, 2009, after Stine was found guilty by the jury. Her attorney requested a competency inquiry because Stine failed to maintain eye contact with him, was extremely jittery, and said she did not understand him. When Stine's counsel tried to discuss her right to testify during the punishment phase of the trial, Stine's counsel stated Stine "could not think straight and [was] unable to make any decisions." Stine told the court she had physical problems, "schizoaffective and borderline personality" disorder and could not "hold . . . a complete thought process," because she had not taken her prescription drugs including Adderall, Seroquel, BuSpar, Lamictal, Avaflex, Mirapex, hydrochlorothiazide, Lisinopril, Klonopin, and hydrocodone.

12

Stine told the court on that day that she understood the jury found her guilty, that the trial was in the punishment phase, and that she understood the range of punishment. Stine also said she would be in a better position if she received her medication. A transportation officer was questioned about Stine's behavior, which he claimed was consistent throughout the week of the trial. A community supervision officer who monitored Stine's community supervision for a prior offense testified Stine reacted similarly when she discovered the State was filing a motion to revoke her community supervision for the previous offense. Once again, the trial court ordered her to take a drug test on that Thursday. The results of the Thursday drug test likewise were positive for amphetamines and methamphetamine. The next day, her counsel reported that Stine was "extremely sleepy and more concerned with resting than really conversing with me." By that time, Stine stated that she had some of her prescribed medication, brought to her by a family member. She requested that the punishment trial not begin until that afternoon.

Instead, the trial court continued the trial until the next week and ordered a psychiatrist, Dr. Charles Keenan, to make a "mental-health assessment and initial evaluation and screening to ascertain whether he thinks there's any other issues, other than medication." The trial court was clear that this was "not a full-blown competency" determination. Keenan met with Stine over the weekend once for forty-five to fifty minutes and another time for fifteen minutes before discussing his findings with the trial court. He relayed to the court that Stine had not slept for a week, was exhausted, and did not have her medication when she was first examined on Friday. Stine was allowed to rest and

13

receive her medication over the weekend. Although Keenan did not do a complete competency examination, he testified Stine knew where she was on that Monday, knew why she was in court, who the attorneys were, and seemed to understand the proceedings as she had some questions about the difference in the two phases of trial. Keenan concluded Stine would have no difficulty discussing matters with her attorney and that she was "competent to continue." After the transportation officer's statement that Stine was in much better shape, the trial court concluded there was no evidence to support Stine's incompetence. Specifically, in the court's opinion, the issue was one of Stine's failure to take medication and get rest, not whether she was competent to stand trial.

Here, the trial court, on suggestion by the defendant, properly considered the issue of incompetency. Stine appeared to be "fidgety" during the trial, prompting the trial court to require drug testing, which returned positive results. Later, it was shown that Stine had been prescribed some prescription medication, some of which she had not taken as prescribed. The trial court attempted to determine whether Stine was "high" or if some other problem existed. After the competency issue was raised by defense counsel and despite being in the middle of a jury trial, the trial court recessed the trial, appointed a psychiatrist to do an evaluation of Stine so that the trial court could determine by informal inquiry whether there was evidence to support a finding that Stine might be incompetent. No such evidence was presented. We believe the actions of the trial court in this instance fully complied with the statutory requirements.

14

Given the evidence presented to the trial court in its informal inquiry, we conclude the trial court did not abuse its discretion in determining that there was no issue as to Stine's competency to stand trial.

**V.     Conclusion**

We affirm the trial court's judgment.


Jack Carter
Justice

Date Submitted:     October 12, 2009
Date Decided:      October 21, 2009

Publish