

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00073-CR

PATRICK LAMONT JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court 3
Tarrant County, Texas
Trial Court No. 1243677D

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Patrick Lamont Johnson was convicted by a Tarrant County jury of burglary of a habitation, received an enhanced sentence of thirty years' imprisonment, and was ordered to pay a $10,000.00 fine. The trial court further ordered the sentence to run consecutively with a previous sentence for burglary of a building. Johnson argues on appeal[1] that the evidence is legally insufficient to support his conviction and that the trial court erred in overruling his objections to the State's closing argument. We overrule these arguments. However, we sustain Johnson's last point of error complaining that the trial court abused its discretion in cumulating Johnson's sentence with that of a prior sentence for burglary of a habitation after the punishment in this case was pronounced and Johnson had left the courtroom. We modify the judgment to delete the cumulation order and affirm the judgment as modified.

## I.      Legally Sufficient Evidence Supports Johnson's Conviction

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of burglary of a habitation beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring).

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see Grissam v. State*, 285 S.W.3d 532, 534 (Tex. App.—Fort Worth 2009, pet. ref'd).

Containing all of the elements of the offense, paragraph one of the State's indictment alleged, and the State was required to prove, that Johnson intentionally or knowingly entered Xochitl Barragan's home without her effective consent and with the intent to commit theft. *See* TEX. PENAL CODE ANN. §§ 30.02, 31.03(a) (West 2011); *Stine v. State*, 300 S.W.3d 52, 56 (Tex. App.—Texarkana 2009, pet. dism'd, untimely filed). Paragraph two of the indictment alleged that Johnson "DID ATTEMPT TO COMMIT OR COMMIT[TED] THEFT" by appropriating or attempting to appropriate Barragan's property, without effective consent, with intent to deprive her of it. *See* TEX. PENAL CODE ANN. § 31.03(a), (b)(1) (West Supp. 2012).

Johnson challenges the element of identity. As demonstrated by the recitation below, the evidence was legally sufficient to prove that Johnson was the perpetrator of this crime.

3

Barragan was Johnson's neighbor. On occasion, she would allow Johnson to borrow her tools for household projects. In early May 2011, Barragan "noticed there was broken glass outside of the garage window," "some plants were stepped on[,]" and "a 1-ton jack, a 3-ton jack . . . a Craftsman 100-piece wrench and ratchet set" and a "weed wacker" were missing. She concluded, "My home was burglarized," and called the police.

Officer Lewis Sanborn was dispatched to Barragan's home. Although no fingerprints were found, Sanborn took a photograph of a "[z]igzag" shoe print likely made by the perpetrator. Barragan also noticed footprints "outside of the garage window" and saw "those same footprints from my neighbor's yard that had jumped over the fence in between his yard and mine next to a tree, so it was in the middle of the yards, and those same footprints again on the inside of the gate." The discovery of the footprints led Barragan to suspect Johnson of the theft.

Meanwhile, Sanborn's report was turned in to Detective Stephanie Phillips who "checked [Johnson's] pawn history" in a "statewide database called Leads Online"[2] and discovered that Johnson had pawned items matching the description of the stolen goods on May 2, 2011, at a Cash America Pawnshop at 8103 Camp Bowie West Boulevard in Fort Worth. Sanborn called Barragan to inform her that the stolen items may have been at Cash America. Barragan went to the "Cash America on West Camp Bowie," presented "some of the owner's manuals" from the stolen goods to employees, and confirmed that her property had been pawned to the shop.[3]

---

[2]Phillips explained that pawnshops are required by law to list items pawned in the database with "the description of the item that's pawned, and with serial number if available."

[3]Barragan testified that the serial number from the weed wacker matched the owner's manual in her possession, the floor jacks had the same model number, and the tool set "had the same wood stain on it from using it" when she installed her fence.

4

Phillips interviewed Johnson following this discovery. While it proved inconclusive, Phillips had the opportunity to photograph the shoes that Johnson was wearing. Ron Fazio, a laboratory director and forensic scientist for Integrated Forensic Laboratories, testified that he could not compare the photograph of the shoeprint left on Barragan's property with the photograph Phillips took of Johnson's shoe because they were "not nearly sufficient quality to be able to do an examination" since the photographs did not include a scale and "the lighting need[ed] to be from many different angles." However, Phillips testified that "[t]he ridge pattern looks similar to that in the . . . photographs of the footprints taken outside the victim's garage."

Phillips created a photospread by placing a "photo of Mr. Johnson, along with five other similar looking black males . . . on a single sheet" of paper and took it to pawnshop employee Lydia Perez so she could identify the person who pawned the stolen items. Perez identified Johnson from the photospread.

At trial, Perez testified that she was the lead pawnbroker who received Barragan's property and created a pawn slip memorializing the items brought in by Johnson. The pawn slip lists "Johnson, Patrick L" as the pledgor, contains his driver's license number, address, date of birth, height, and a detailed description of the property Barragan described as missing, which Johnson pawned for $100.00. Perez remembered the transaction in question and identified Johnson in open court. A surveillance video recording of the transaction was taken.

In his brief, Johnson writes that no one saw him take Barragan's property and that the evidence "at best shows a theft by receiving stolen property," not burglary of a habitation. We disagree.

5

While the surveillance video recording from Cash America is not clear, the jury could see that the physical characteristics of the person representing himself as Johnson to Perez at the time of the transaction matched Johnson's appearance in court. Further, Perez confirmed that Johnson pawned the items by viewing his driver's license at the time of the transaction, and by identifying him in the photospread and in court. The pawn slip, surveillance video recording, and testimony establish that Johnson pawned the items Barragan had reported as stolen.

Johnson was Barragan's neighbor, had borrowed her tools, and knew where they were located. The evidence showed that the thief went straight to the garage and did not disturb the other areas of the property. Only one set of footprints was found at the scene. According to Barragan's testimony, the footprints indicated that the perpetrator came from Johnson's yard into her yard. The shoeprint photographed by Sanborn, according to Phillips' testimony, looked similar to the sole of the shoes Johnson wore to his interview. The jury was free to compare the two photographs despite Fazio's explanation as to why they could not be used to determine whether Johnson's shoe left the print in Barragan's yard.[4]

We conclude that the logical force of the circumstantial evidence, when viewed in combination with the reasonable inferences from that evidence and in a light most favorable to the verdict, is sufficient for a rational fact-finder to determine that the essential elements of burglary of a habitation, including identity, were met beyond a reasonable doubt. Johnson's first point of error is overruled.

---

[4]"[W]e do not reevaluate the weight and credibility of the evidence, but act only to ensure that the jury reached a rational decision." *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

## II. State's Closing Arguments Were Proper Pleas for Law Enforcement

We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd).

Johnson made two objections to the State's closing arguments during the punishment phase of his trial. One objection was made after Johnson was described as "big and powerful":

> [BY THE STATE]: . . . . We're going to ask you to send this Defendant to the penitentiary for a long time, for a substantial number of years. Look at him. Physically just look at him. Send him there long enough that he if he gets out, he's not this big and powerful.
>
> [JOHNSON'S COUNSEL]: Judge, I'm going to object. He's outside the record. There's no evidence of what the Defendant is or isn't.
>
> THE COURT: Overruled.

Johnson's brief states, "There is no evidence as to the size and powerfulness of the accused." It appears that Johnson is arguing that the State's comment constituted a "comment outside the record." However, the jury was able to observe Johnson's size from his presence at trial and the surveillance video recording.[5] Thus, the argument was not outside of the record and was properly overruled.[6]

---

[5] The record indicates Johnson was six feet tall.

[6] Further, the brief fails to include an analysis of why such comment harmed Johnson.

Next, Johnson also objected to the following argument:

>        [BY THE STATE]:  . . . . Xochitl wasn't home the day at the time that he broke into her house, thank goodness.  Because what if she would have been?  What if his plan would have gone awry, what if she would have been sick that day, stayed home?  What if she would have been at the house when he broke in?  What if they would have confronted each other?
>        We hear about homeowners getting assaulted, getting shot at their houses.  We hear about homeowners --

>        [JOHNSON'S COUNSEL]:  Excuse me, Judge.  I'm going to object.  He's outside the record, and it's facts that aren't in the record.  Object to it.

>        THE COURT:  What's your response to that?

>        [BY THE STATE]:  Your Honor, I'm entitled to argue community safety.

>        THE COURT:  All right.  Overruled.  You may proceed.

"[I]t is not necessarily improper to stray outside the record during argument . . . .  It is only improper to stray outside the record and inject *facts* that are not in evidence."  *Saltman v. State*, 762 S.W.2d 376, 378 (Tex. App.—Fort Worth 1988, pet. ref'd).  The State's hypothetical questions were not factual assertions.  *See Waters v. State*, 330 S.W.3d 368, 375–76 (Tex. App.—Fort Worth 2010, pet. ref'd) ( "'*What if it had been a little girl or boy standing on the corner instead of just a curb*?'" was permissible argument in DWI case even in absence of evidence that defendant's driving while intoxicated had harmed others).

Arguing facts that are common knowledge is an exception to the prohibition against arguing facts outside the record.  *Nenno v. State*, 970 S.W.2d 549, 559 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999); *Carter v. State*, 614 S.W.2d 821, 823 (Tex. Crim. App. [Panel Op.] 1981); *see Laca v. State*, 893 S.W.2d 171, 185 (Tex. App.—El Paso 1995, pet. ref'd) (noting "kids are dying in our streets"

8

not improper argument since it was matter of common knowledge and "was not a direct or indirect attempt to connect the appellant to other gang murders"). The statement that "homeowners [are] getting assaulted, getting shot at their houses" is a matter of common knowledge and does not connect Johnson to any such crime. Thus, we conclude the trial court was within its discretion to determine that the statement was not improper.

Moreover, a plea for law enforcement constitutes proper argument. *Marchbanks v. State*, 341 S.W.3d 559, 564–65 (Tex. App.—Fort Worth 2011, no pet.) (citing *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992)); *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).[7] A prosecutor may argue the relationship between the jury's verdict and deterrence of crime in general and can refer generally to the existence of other victims of crime in argument as a plea for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55–56, 57 (Tex. Crim. App. 1990) (per curiam).

We find that the prosecutor's general comments, references to common knowledge, and hypothetical questions, which did not inject facts not in evidence, were designed to explain the type of harm that could be prevented by enforcing the Texas Penal Code and punishing those found guilty of burglary of a habitation. Therefore, we cannot say that the trial court abused its discretion in overruling Johnson's objections contending that the State's comments were outside the record.

We overrule Johnson's second point of error.

---

[7]"Even when an argument exceeds the permissible bounds of these approved areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook*, 29 S.W.3d at 115.

### III. Order Cumulating Johnson's Sentences Is Reversed

The trial court's judgment contained the following language pursuant to a cumulation order:

> SENTENCE IN THIS CAUSE NUMBER TO BEGIN WHEN SENTENCE IN CAUSE NUMBER 1241170D, THE STATE OF TEXAS VS. PATRICK LAMONT JOHNSON, FOR THE OFFENSE OF BURGLARY OF A BUILDING, RENDERED ON OCTOBER 26, 2011, FOR TWO (2) YEARS IN THE STATE JAIL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CEASES TO OPERATE.

Johnson argues that the trial court abused its discretion in ordering the cumulation of his sentences after he was removed from the courtroom.

A trial court's decision to cumulate sentences is reviewed for an abuse of discretion. *Strahan v. State*, 306 S.W.3d 342, 351 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *Hurley v. State*, 130 S.W.3d 501, 503 (Tex. App.—Dallas 2004, no pet.)).

"[T]he imposition of sentence is the crucial moment when all of the parties are physically present at the sentencing hearing and able to hear and respond to the imposition of sentence." *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002). Except in circumstances not present in this case, "sentence shall be pronounced in the defendant's presence." Tex. Code Crim. Proc. Ann. art. 42.03, § 1 (West Supp. 2012). This Rule applies to a trial court's decision to cumulate sentences. Tex. Code Crim. Proc. Ann. art. 42.08(a) (West Supp. 2012); *see Grays v. State*, 291 S.W.3d 555, 558 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Thus, "if a trial court wishes to cumulate a defendant's sentences, it must so order at the time and place that sentence is orally pronounced," and in the defendant's presence. *Grays*, 291 S.W.3d at 558 (citing *Madding*, 70 S.W.3d at 136). It is "too late to cumulate the sentence just imposed with an

earlier one" "[o]nce [the defendant] leaves the courtroom, [because] the defendant begins serving the sentence imposed." *Madding*, 70 S.W.3d at 135, 136.

The record demonstrates that Johnson was removed after the trial court sentenced him to thirty years' imprisonment and ordered him to pay a $10,000.00 fine. Thereafter, the jury was discharged, and the State notified the court that it "did file a motion requesting a consecutive or stacked sentence be assessed based upon the two-year state-jail sentence from Cause No. 1241170D that the Defendant received from the jury last calendar year and then the sentence today." Over objections by Johnson's attorney that "the Defendant's already been sentenced in this case," the trial court "grant[ed] the State's motion for consecutive sentence."

The trial court abused its discretion in ordering Johnson's sentences to be cumulated after he left the courtroom. The State's brief contains the following concession:

> Reluctantly, the State agrees the trial court abused its discretion by cumulating the appellant's sentences without the appellant being physically present in the courtroom when the trial court orally pronounced its stacking decision. This Court should reform the trial court's judgment by deleting the stacking order.

We agree.

"[A]n unlawful cumulation order is remedied by reforming the judgment to set aside the order" in lieu of remanding the matter for resentencing because an unlawful cumulation order does not constitute reversible error. *Beedy v. State*, 250 S.W.3d 107, 113 (Tex. Crim. App. 2008). We sustain Johnson's third point of error.

11

## IV.    Conclusion

We modify the judgment to set aside the cumulation order and affirm the trial court's judgment as modified.

Bailey C. Moseley
Justice

Date Submitted:    August 19, 2013
Date Decided:    August 20, 2013

Do Not Publish