

NUMBER 13-14-00609-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ORLANDO ROBLES,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                             Appellee.

On appeal from the 28th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Longoria
Memorandum Opinion by Justice Garza**

A Nueces County jury convicted appellant, Orlando Robles, of sexual assault, a second-degree felony, and sentenced him to twenty years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.011 (West, Westlaw through Ch. 46, 2015 R.S.). On appeal, he contends that the trial court erred: (1) by denying his motion for mistrial when the State introduced evidence of an unrelated sexual assault, and (2) by admitting evidence of prior

convictions at the punishment phase. We affirm.

## I. BACKGROUND

Robles was charged by indictment with having intentionally or knowingly penetrated the sexual organ of S.A.,[1] the complainant, with his finger and without the consent of the complainant. *See id.*

At trial, S.A., who was twenty years old at the time of her testimony, testified that she was driving her car in Corpus Christi at around 4:00 a.m. on or about September 29, 2013. She was going to Cole Park to meet a friend and "[j]ust to think, get my head clear." Because the friend did not respond to her texts, S.A. left the park and headed to her home. As a precaution, she checked to make sure no one was following her.

S.A. stated that, when she stopped at an intersection, a man walked up to the driver's side of her car and told her she was "dragging something." The man instructed her to pull over to the right, and she did. The man also pulled over to the right in his truck. The man exited the truck and touched the tire of S.A.'s car. At that point, sensing "something was off," S.A. got back in the car and retrieved her car keys. She then returned to the back of the car. According to S.A., the man asked "about like three times" where her spare tire was. S.A. stated she grabbed her keys around her hand and "h[e]ld them like if something was going to happen." S.A. stated that the man then attacked her, causing her to fall to the ground. S.A. begged the man to stop and told him to take the money that was in the car. S.A. testified the man "slam[med]" the side of her head against the ground, pulled her shorts off, and "stuck his fingers inside of [her]." She stated that

---

[1] Although the complainant's identity was not concealed at trial, we will use only her initials here, given the nature of the case. *See, e.g., Sledge v. State*, 953 S.W.2d 253, 258 n. 1 (Tex. Crim. App. 1997) (Overstreet, J., dissenting).

she was trying to fight back against the man and that she struck him repeatedly with her keys on the back of his neck. She pressed the panic button on her keys, which caused the car to start honking. After four honks, she ran to get inside her car and she "t[oo]k off." According to S.A., she initially attempted to "run him down" but she then got "real dizzy," and "he took off."

S.A. drove to a nearby Stripes store and called her boyfriend. When he did not answer, she called her mother. When her mother did not answer, she called her brother, and her brother came to the scene with her mother. S.A. did not call the police, but the police eventually arrived. S.A. was "scared, shook up, [and] angry" when answering questions posed by police. S.A., her brother, and her mother picked up one of S.A.'s friends and went home.

At the scene, S.A. could not give a description of the assailant. When she spoke to detectives the next day, S.A. was unable to identify her assailant from "two or three" photo lineups. At trial, she testified that the assailant was "Mexican, not built but stocky," and about 40 to 50 years old.

According to S.A., the police officer at the scene initially told her that an ambulance would come to take her to the hospital, but "after everything was done, he told me to go home and take a shower." S.A. did not think that was a good idea. She stated that she went home, smoked marihuana, and later went to the hospital because she "wanted to get checked out." She was later transported by ambulance to a different hospital for a sexual assault nurse examination ("SANE exam"). When S.A. gave a urine sample at the request of hospital staff, she noticed that she had been "nicked" inside her sexual organ, causing a small amount of bleeding. S.A. testified that the assailant also caused minor

3

injuries to her face, knees, hands, neck, and lips.

Police officer Alyssa Hernandez testified that she was on patrol on the date and time in question when she saw S.A. "waving me down" and crying in front of the Stripes store. S.A. "kept saying, 'He tried to rape me, he tried to rape me.'" S.A. had blood on her legs and looked "disorganized and disarrayed." Hernandez stated that S.A. was cooperative with police; however, when S.A.'s brother arrived, he "was so upset at the situation that I had to threaten him a couple of times, 'If you don't stop interfering, I'm going to arrest you for interference.'" Hernandez stated that she "understood where he was coming from because I would be upset too." Hernandez denied telling S.A. to go home and take a shower.

Officer Eric Smith testified that he was Hernandez's field training officer on the date and time in question. According to Smith, S.A. said "I stabbed him" multiple times. Smith testified that he allowed S.A. to go to the hospital with her family because "I didn't want to traumatize her more by taking her in an ambulance, or have us transport her." When the prosecutor asked whether he advised S.A. to go home and take a shower, Smith replied: "No, that's a huge don't, for the SANE Exam, there's several policies and we need them not to take a shower, not to wash, not to change clothes because we need that as evidence."

A DNA sample was obtained from S.A.'s car key. A forensic scientist testified that, "to a reasonable degree of scientific certainty," Robles or an identical twin was the source of the DNA on the car keys. DNA obtained from S.A.'s underwear was consistent with S.A.'s DNA profile. Another sample taken from S.A.'s underwear was consistent with a mixture, and neither S.A. nor Robles could be excluded as contributors. Robles was

4

excluded, however, as a contributor to a DNA sample obtained from S.A.'s vaginal swab taken as part of the SANE exam.

Nurse Carol McLaughlin testified that she performed S.A.'s SANE exam thirteen hours after the assault allegedly occurred. According to McLaughlin, the exam revealed "23 separate areas of injury" on S.A.'s body, including a one-centimeter "linear bruising abrasion" to the labia minora of her vagina that looked "pretty new." McLaughlin agreed with the prosecutor that the injury was consistent with the insertion of a finger "in a violent rough manner."

The jury found Robles guilty. At the punishment phase, the State presented the testimony of G.G., who stated that, in October 2013, Robles assaulted her by grabbing her breasts. The jury assessed punishment at the maximum twenty years' imprisonment, *see id.* § 12.33(a) (West, Westlaw through Ch. 46, 2015 R.S.), and this appeal followed.

## II. DISCUSSION

### A. Motion for Mistrial

By his first issue, Robles contends his constitutional right to due process was violated, and the trial court erred in denying his motion for mistrial, after evidence of an unrelated sexual assault offense was introduced into evidence.[2]

During trial, Detective Jason Smith identified a box that he had obtained from the evidence locker at the police station. Smith stated that the box contained evidence from a SANE exam. He denied that he packed the box, and he did not know what was inside the box apart from what was written on the outside. When the prosecutor asked what

---

[2] In the "issues presented" section of his brief, Robles includes another issue arguing that the State's "introduction and then removal" of the aforementioned evidence constituted a "de facto admission" of the evidence. However, Robles does not support this issue with argument or references to authority; accordingly, we do not address it. *See* TEX. R. APP. P. 38.1(i).

5

was written on the outside of the box, Smith replied: "It says 'sexual assault evidence collection kit' [and] without removing the paper I can see it says 'panties and kit.' I can't see the patient's name through that but you can see the evidence tape, I'm assuming the blue is from DPS, I'm not sure. I can see my initials up here 'JTS.'"

Later, the prosecutor asked nurse McLaughlin to identify the same box, designated as State's Exhibit 52. McLaughlin removed a piece of tape from the box and replied: "This is a sexual assault evidence kit that I collected on an [A.T.] on September 28, 2013." At that point, the prosecutor acknowledged that the box presented as State's Exhibit 52 was "the wrong kit" and "is from a different case [altogether]." Defense counsel moved for a mistrial, arguing: "The State offered evidence to the jury now it's extraneous evidence. It's extraneous offense, I mean, it doesn't take an Einstein on the jury to figure out, 'Well, you got more than one rape kit, you got more than one victim.'" Defense counsel elaborated, outside the presence of the jury, as follows:

> I don't think there's any question that there was testimony offered about [S.A.]'s test kit, and now [McLaughlin] has identified another test kit with another name. The jury knows what that test kit is about and what the purpose of it is, and I don't see how there could be any inference that it is not another case connected with this defendant. . . .

> And for the record, Your Honor, [A.T.] is another case which was very instrumental in getting my client arrested, she drew a comb positive [sic] drawing, she was examined, I don't know—I don't think there's an indictment on her but there's an offense reports [sic] on her. The two cases were submitted to DPS under one cause number—one case number. And I think [Detective] Smith had to go back and separate the two request forms because they said they wouldn't do an examination—multiple examinations on one case. But this is a case, Your Honor, that also took place on September 28, this was the day before and this is a situation where a lady on the Arts Apartments on Ocean Drive was supposedly attacked in the underground parking area early in 3 o'clock in the morning, 3:40 something in the morning.

The trial court denied the motion for mistrial, but gave the jury the following instruction:

6

"Apparently, that was the wrong box ladies and gentlemen. The Court is going to ask you to disregard the testimony of this prior witness at this point."

The following day, prior to closing arguments, defense counsel reiterated his objection outside the presence of the jury as follows:

> I want to renew my request for a mistrial on this case. I got calls last night until 10:30 about the fact that my client had two allegations against him. The press has been broadcasting since Tuesday the nature of this trial, yesterday, and this morning and in the newspaper also it [al]ludes to the fact that my client has two charges against him. I think it was unusual that the wrong rape kit or sexual assault kit got identified by Officer Smith or Detective Smith and also got identified by [McLaughlin], but she actually read the name of another person which she was asked. I don't really blame her, that's what she was asked to do but I think that the inference it's so overwhelming that my client has committed an extraneous offense and that's just a little bit more evidence that a jury will need to resolve the doubt in favor of the State, if they had even a close doubt, so I want to renew my objection and to the—my request for a mistrial.

The trial court ruled as follows:

> I think I've been admonishing the jurors not to hear, listen, read any news reports concerning this case and I can only hope that the jurors have followed the Court's instructions. And I believe there was no connection to the box to any other case the defendant may or may not have pending, so your objection is—your request for mistrial is denied.

A mistrial is an appropriate remedy only in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id.* Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.* A trial court's denial of a mistrial is reviewed for an abuse of discretion. *Id.* We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id.* The trial court's ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

7

We find no abuse of discretion in the trial court's denial of Robles's motion for mistrial. The unrelated SANE kit was undoubtedly irrelevant and inadmissible as evidence in Robles's trial. However, the jury was never made aware that the unrelated SANE kit involved Robles in any way. The only indication in the record that Robles was suspected in the unrelated sexual assault was defense counsel's representation outside the presence of the jury that the unrelated case "was very instrumental in getting my client arrested."

Even if the jury had been made aware that Robles was the alleged perpetrator of the assault evidenced by the unrelated SANE kit, the prosecutor immediately recognized the error and the trial court instructed the jury to disregard McLaughlin's testimony.

> It is well-settled that testimony referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard by the trial judge, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind.

*Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *Stine v. State*, 300 S.W.3d 52, 58 (Tex. App.—Texarkana 2009, pet. ref'd); *Allen v. State*, 202 S.W.3d 364, 370 (Tex. App.—Fort Worth 2006, pet. ref'd). Here, even assuming the jury was somehow aware of Robles's identity as the suspect in the unrelated case, the reference to the other case was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard. *See Kemp*, 846 S.W.2d at 308 (finding that witness's statement that appellant "had recently been released from the penitentiary" was "uninvited and unembellished" and was cured by trial court's instruction to disregard); *Gardner v. State*, 730 S.W.2d 675, 696–97 (Tex. Crim. App. 1987) (holding the same where witness testified that appellant "told me that even when he was in the penitentiary, that he had stomach problems"); *see also Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) ("On appeal, we

8

generally presume the jury follows the trial court's instructions in the manner presented.").

We overrule Robles's first issue.

## B.     Evidence of Prior Convictions

By his second issue, Robles argues that the trial court erred in admitting evidence, at the punishment phase, of prior convictions. Robles contends that the evidence was inadmissible under rules 602 and 902 of the Texas Rules of Evidence. We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). We will not disturb the trial court's decision as long as the ruling was within the "zone of reasonable disagreement." *Id.*

Prior to the presentation of testimony at the punishment phase, the State sought to introduce its Exhibits 55 and 56, two documents purporting to show that Robles had previously been convicted of felonies in Virginia. Exhibit 55 states "Felony Burglary: At Night, to Commit Felony" with the date of offense listed as March 12, 2010. The exhibit also showed that Robles pleaded guilty to the offense and that a sentence of two years in the penitentiary was imposed, with the sentence suspended for one year and eleven months. Exhibit 56 states "Felony Crimes Against Nature" with the date of offense listed as March 28, 2005. The exhibit states that the charge was amended to "Indecent Exposure" but does not state how Robles pleaded. It appears that Robles was sentenced to twelve months' imprisonment, with the sentence suspended for twelve months. Both documents contain Robles's name, date of birth, and social security number, and both were certified as "complete, full, true, and exact reproduction[s] of the original document[s]" by a notary public. The trial court overruled defense counsel's objections and admitted both exhibits as evidence.

9

Texas Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." TEX. R. EVID. 602. Texas Rule of Evidence 902 states in relevant part that the following items of evidence are "self-authenticating" in that "they require no extrinsic evidence of authenticity in order to be admitted":

(1) *Domestic Public Documents That Are Sealed and Signed.* A document that bears:

    (A) a seal purporting to be that of the United States; any state, district, commonwealth, territory, or insular possession of the United States; the former Panama Canal Zone; the Trust Territory of the Pacific Islands; a political subdivision of any of these entities; or a department, agency, or officer of any entity named above; and

    (B) a signature purporting to be an execution or attestation.

. . . .

(8) *Acknowledged Documents.* A document accompanied by a certificate of acknowledgment that is lawfully executed by a notary public or another officer who is authorized to take acknowledgments.

TEX. R. EVID. 902.

On appeal, Robles contends that the evidence of his prior convictions was inadmissible under rule 602 because "there was no witness who testified to the authenticity of the documents"; and further, that the evidence was inadmissible under rule 902 because "the documents bore no seal [of] the Commonwealth of Virginia" and the only signature on the documents were those of a notary public. As the State correctly notes, however, Robles does not address section (8) of rule 902, which provides that documents certified and lawfully executed by a notary public are self-authenticating. *See* TEX. R. EVID. 902(8). We conclude that the evidence was admissible under this section of rule 902, and we overrule Robles's second issue.

10

### III. Conclusion

The trial court's judgment is affirmed.

DORI CONTRERAS GARZA,
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
31st day of August, 2015.