

## NUMBERS 13-15-00070-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

**JOSE BARBONTIN SALAS,**                               **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                   **Appellee.**

### On appeal from the 24th District Court of DeWitt County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Longoria**
**Memorandum Opinion by Justice Longoria**

A jury found appellant Jose Salas guilty of evading arrest with a vehicle. *See* TEX. PENAL CODE ANN. § 38.04(b) (West, Westlaw through Chapter 46, 2015 R.S.). His sentence was enhanced for being a habitual felony offender; the jury sentenced him to life in prison. *See* TEX. PENAL CODE ANN. § 12.42(d) (West, Westlaw through Chapter 46,

2015 R.S.).  In three issues on appeal, Salas argues that the State:  (1) asked improper commitment questions during voir dire; (2) made an improper "conscience of the community" argument in its final argument; and (3) inappropriately mentioned that Salas was on parole during examination of one of its witnesses.  We affirm.

## I. BACKGROUND

On January 21, 2015, Salas was convicted of the felony offense of evading arrest with a vehicle.  *See id.* § 38.04(b).  Because Salas was a habitual felony offender, the punishment range was enhanced to a minimum of twenty-five years to a maximum of life.  *See id.* § 12.42.  The prosecutor for the State asked the venire panel on various occasions regarding its ability to consider or assess the maximum punishment.  For example, the prosecutor asked, "Anybody on that row who could not consider or assess the high end of the range of punishment if it's proven . . . [that] a person is a habitual felon under the laws of Texas?"  Salas objected to the use of the word "assess," alleging that it was improperly committing the jury to a set of facts.  Salas contended that it was only appropriate to ask if the venire could "consider" the full range of punishment, not "assess."  The trial court overruled the objections but granted Salas a running objection.

During the trial, the State called Carl Bowen, a police sergeant, as a witness.  The following exchange occurred:

[State]:      What was the Defendant running from?

[Bowen]:    The Defendant was running from a Yaokum [sic.] police officer.

[State]:      And did he tell you that he saw cops chasing him?

[Bowen]:    Yes.  He did.  He said, man, I saw him behind me and I didn't want to stop.  I'm on parole and I didn't want to go back to jail.

2

Salas objected to this exchange. The trial court sustained the objection and immediately issued an instruction to the jury:

> All right. Ladies and Gentlemen, I'm going to sustain [defense counsel's] objection with respect to the witness'[s] statement about being on parole. You are to disregard the witness'[s] comment about the Defendant's statement about being on parole. That is not to be considered by you for any purpose in your deliberations and it is not to be considered as evidence of any fact. It's not to be considered for any purpose.

Salas next made a motion for mistrial, which the trial court denied.

During the final argument of the guilt/innocence phase of the trial, the prosecutor addressed the jury as follows: "So we ask that as a conscience of our community that you take this duty very . . . ." Salas immediately objected to this as an inappropriate community argument; a bench hearing followed. The trial court overruled the objection but informed Salas that if the prosecutor crossed the line into improper territory, the State would be subject to further objections. The State continued, without further objections, by stating, "Thank you for your patience. As members of the community we ask that you just pursue your civic duty here today and we request that the jury return a verdict form of number one. Thank you for your time, and we really appreciate your civic duty. Thank you." The jury sentenced Salas to life in prison.

## II. APPLICABLE LAW AND ANALYSIS

### a. Commitment Questions During Voir Dire

In his first issue, Salas argues that the State asked improper commitment questions to the venire panel. Salas asserts that by asking the panel whether it could

3

"consider and assess" the maximum punishment the State was committing the panel to a particular verdict. However, we conclude that the State's questions were proper.

A trial court has broad discretion over the process of selecting a jury. *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Thus, we review objections to the venire panel questions for abuse of discretion. *See id.* During voir dire, there are both appropriate and inappropriate commitment questions. *See Sanchez v. State*, 165 S.W.3d 707, 711 (Tex. Crim. App. 2005) (en banc); *Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001). Commitment questions are improper

> (a) when the law does not require the commitment, such that a juror would not be disqualified for cause by being influenced by a particular fact or by having a particular attitude or opinion, or (b) even if the question meets the challenge for cause requirement, if it also includes facts in addition to those necessary to establish a challenge for cause.

*Sanchez,* 165 S.W.3d at 711 (citing *Standefer*, 59 S.W.3d at 181). On the other hand, the aim of a proper commitment question is to discover a venireman's preexisting bias or prejudice without committing the juror to a specific verdict. *See id.* For example, it is proper to ask questions relating to the juror's ability to consider the full range of punishment for a particular offense. *See Standefer*, 59 S.W.3d at 181. However, it would be improper to ask if the juror "could consider five years in prison in a case in which the State alleged that the defendant 'tortured, garroted, poisoned, and pickled' the victim" because that question goes beyond the statutory elements and adds facts peculiar to the case on trial. *See Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010).

Salas's arguments are unfounded. The State is entitled to have jurors that can consider the maximum allowable sentence just as the defendant is entitled to jurors that can consider the minimum allowable punishment. *See id.* In this case, the State was

4

inquiring whether potential jury members would have any qualms with considering and assessing the maximum punishment allowable in this case (imprisonment for life). These were proper commitment questions because the law requires such a commitment: if a juror cannot consider a scenario in which the maximum sentence were appropriate, even when the facts justify it, that juror can be challenged for cause. *See id.* at 188. Specifically, the language "assess" implies that the juror could think of a hypothetical situation in which he or she could impose the maximum sentence. Using the word "assess" in tandem with "consider" was not improperly committing the jury. By asking whether they could "consider and/or assess" the maximum sentence, the State was within its proscribed bounds of challenging jurors for cause. The State did not add any facts that are particular to this case and the State only asked about those facts necessary to strike for cause. *See id.* Thus, the trial court did not abuse its discretion in allowing these questions. We overrule Salas's first issue.

b.    **Improper "Conscience of the Community" Jury Arguments**

In his second issue, Salas contends that the State made an improper community argument to the jury. We disagree.

We review a trial court's rulings on objections to jury argument for abuse of discretion. *See York v. State*, 258 S.W.3d 712, 717 (Tex. App.—Waco 2008, pet. ref'd). During closing arguments, the State is allowed to argue the impact of the jury's verdict on the community but may not attempt to argue that the community expects or desires a specific punishment. *See Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990) (en banc); *York*, 258 S.W.3d at 718; *see also Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984) (holding improper the argument: "Now, the only punishment that you

5

can assess that would be any satisfaction at all to the people of this county would be life."); *Mata v. State*, 952 S.W.2d 30, 33 (Tex. App.—San Antonio 1997, no pet.) (holding improper the argument, "So I ask you, this is a hard decision that you have to make, but I will tell you on behalf of the State of Texas, an aggravated sexual assault such as this, probation is not what this community and what the State would want"). However, mere references to "the community" do not constitute an improper appeal to community expectations. *See Harris v. State*, 122 S.W.3d 871, 888 (Tex. App.—Fort Worth 2003, pet. ref'd). The State may ask the jury to be the "voice" of the community as long as it does not ask the jury to lend its "ear" to the community. *Id.*

The State is allowed to remind the jurors of their civic duties as members of the community. *See Borjan*, 787 S.W.2d at 56. Merely mentioning the phrase "conscience of our community" is not an error in itself. *See Harris*, 122 S.W.3d at 888. It is only when the State tries to imply that being the conscience of the community demands a certain verdict that such a plea becomes improper. *Id.* The State made no such argument in this case. The State simply reminded the jury that as members of the community that they represented the voice of the community. This was not an improper community argument. *See id.* The trial court did not abuse its discretion in overruling appellant's objection. We overrule Salas's second issue.

### c.    Curative Jury Instructions

In his final issue, Salas argues that a new trial should have been granted because the instruction to the jury to disregard the testimony mentioning that Salas was on parole was not curative. We disagree.

6

We employ a case-by-case analysis to decide whether an instruction given to the jury is curative of the underlying error. *See Stine v. State*, 300 S.W.3d 52, 59 (Tex. App.—Texarkana 2009, pet. ref'd) (citing *Hardin v. State*, 20 S.W.3d 84, 93 (Tex. App.—Texarkana 2000, pet. ref'd)). In this analysis, we look to several factors, including: (1) the weight of other evidence supporting the decision; (2) nature and form of the question; (3) the State's purpose in asking the question; (4) whether other evidence concerning the same subject has been admitted; (5) the particular instruction given; and (6) the harm to the accused as measured by the severity of the sentence." *Id.* In summary, "[o]nly when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant may a motion for mistrial be granted." *Bauder v. State,* 921 S.W.2d 696, 698 (Tex. Crim. App. 1996).

We do not find that the objectionable testimony was so emotionally inflammatory that the curative instructions were unlikely to prevent the jury from being unfairly prejudiced. *See id.* The *Stine* factors lean heavily against Salas. *See Stine,* 300 S.W.3d at 59. Factor one supports the State because Salas does not even argue that the evidence was legally or factually insufficient; thus, factor one supports the State because the weight of the evidence supporting the decision is sufficiently strong. *See id.* Furthermore, factors two and three support the State because the nature, form, and the reason behind the question are all innocuous. *See id.* Immediately prior to the objectionable testimony, the State asked, "And did he tell you that he saw cops chasing him?" The State did not make any mention or reference to the extraneous offense in its own question. The sergeant volunteered that information in his response. It does not

7

appear that the State was specifically trying to elicit details about Salas's parole; rather, the State asked the question to help establish an essential element of the crime: that Salas was intentionally fleeing from a person he knew to be a peace officer. Moreover, the fourth factor disfavors Salas because no one else mentioned the parole during the entire trial. *See id.* The fifth factor favors the State because there is nothing wrong with the curative instruction the trial court gave to the jury. *See id.* Salas argues that the "cat's out of the bag" and that the jury was incurably and permanently prejudiced by hearing that single statement. While it might be true in the case of the most prejudicial of statements, it is not true here. The instruction appears to be as effective as any jury instruction can be. Plus, the trial court acted immediately in addressing the jury and instructing them to disregard the challenged comments.

The final factor analyzes the harm to the accused as measured by the severity of the sentence. *See id.* However, this factor also disfavors Salas because there is no evidence to suggest that the severity of Salas's sentence was affected by Salas's parole being briefly mentioned. The evidence to support Salas's conviction was ample. *See id.* As we noted above, Salas does not challenge the sufficiency of the evidence. Furthermore, the State proved the elements for the enhancement by showing that Salas had been convicted of seven previous felonies. Given these circumstances, the jury was not incurably prejudiced simply by hearing that Salas was on parole and then being promptly instructed to disregard that statement. The sentence Salas received was based on the underlying crime and the enhancement, not the brief statement suggesting that he was on parole. We conclude the trial court's instruction to the jury was curative and no harm resulted. We overrule Salas's third issue.

8

## III. Conclusion

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
31st day of August, 2015.