Opinion issued June 30, 2016



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00297-CR

————————————

**PRENTIS RAY VENZANT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Case No. 14-CR-2810

## MEMORANDUM OPINION

This is an appeal from a conviction for unauthorized use of a motor vehicle.

We affirm.

## BACKGROUND

### A. Trial Testimony

The complainant C. Heidelberg is a member of the Coast Guard and lives in Galveston, Texas. She testified that, on July 22, 2014, she parked her 2014 Toyota Tacoma pickup truck in the parking lot of her apartment complex around 9:00 p.m., and that her truck was still there when she walked her dog about 10:00 p.m. When she went to leave for work about 6:30 the next morning, July 23rd, the truck was gone. She had locked the truck, but there was a spare key in the center console of the truck that she placed there on the 22nd and forgot to remove that night. She immediately called the police, and an officer came out and took a report on the theft. Heidelberg testified that she did not give anyone permission to drive her truck that night or the next day. When appellant was pointed out to her in the courtroom, she testified that she had never given him authorization to drive her truck.

About ten days after she reported her truck stolen, Heidelberg got a bill in the mail from an impound lot for storage of her truck. She called the officer who had taken her report, who was not aware that the truck had been recovered. He gave her the name of an Officer J. Blackwell in the Auto Crimes Unit to call, and he likewise was not aware that Heidelberg's truck had been recovered. Upon further investigation, Blackwell told her that he discovered that it was not flagged

2

in the system yet as stolen when appellant was pulled over driving it; it just happened to get impounded the day after it was stolen because appellant had committed a traffic violation while driving the truck.

It cost Heidelberg $500 to get her truck out of impound. She also testified that—although she usually does not keep anything in the cab of her truck—she had returned from a two-week trip on the night of July 22, and had been too tired to unpack anything. Thus, in her truck cab, she had "clothes, GPS, laptop, games, pretty much a lot of important things." While she was able to retrieve her truck from the impound lot, she never recovered the items that were in her truck. She did not notice any damage to her truck after she got it back. She lives in a gated community that cannot be accessed without a code or "clicker," unless someone who lives in the complex lets an outsider in.

Heidelberg was shown a dash-cam video of appellant and a passenger getting out of her truck during a traffic stop and testified that she did not recognize either of them. She has never given anyone a copy of the key to her truck, and had not left the truck at a shop or with a valet that would have been able to copy the key. She has never loaned the truck to anyone, and does not know how it was stolen.

Sergeant P. Gist with the Clear Lake Shores Police Department testified to coming into contact with appellant during the early morning hours of July 24,

3

2014. He pulled appellant over for running a red light. At that point, Gist was not aware that the truck appellant was driving was a stolen vehicle. During his testimony, Gist narrated the dash-cam video of the traffic stop that was introduced into evidence and played for the jury.

During the stop, Gist approached appellant, explained the traffic infraction he witnessed, and asked for identification and insurance. After some looking, appellant finally presented Gist with a tattered paper identification. After appellant unsuccessfully searched throughout the vehicle for an insurance card, he told Gist that "it was his aunt's vehicle and he did didn't know where the insurance was." Gist issued appellant citations for running a red light and failure to maintain proof of financial responsibility.

Because appellant lacked a valid driver's license, had no insurance, and had just committed a traffic violation, Gist told appellant that the vehicle was going to be impounded, and that appellant's aunt would have to make arrangements to retrieve her vehicle. Gist suggested that appellant and his passenger walk up to a nearby Valero to call someone for a ride. Gist testified that appellant's demeanor reflected such a lack of concern that Gist pointed out to appellant that, in some situations, "individuals are placed into custody for no license, no insurance, and a traffic violation." The video of the stop showed another Galveston County Sheriff's Department officer arriving and talking to Gist. Gist and the other

4

officer, Deputy Smitty, performed a pat-down on appellant and his passenger to make sure they were not carrying any weapons before he released them. Gist explained that "Deputy Smitty . . . actually recognized both of these individuals and conversed with them briefly because he worked in the jail at the Sheriff's Department for some time."

Gist's last statement drew an objection from appellant's attorney. The following exchange was had at the bench:

> [DEFENSE COUNSEL]: Your Honor, I'm going to object because this is -- the officer has just interjected in this trial information that this defendant had been in jail and that's how the deputy recognized him. That's extremely prejudicial.
>
> THE COURT: He didn't say he was in jail. He said from the jail. He could have been a visitor, worked at the jail. He didn't say in what capacity he recognized him from the jail. That's my recollection. Am I remembering that incorrectly?
>
> [STATE'S COUNSEL]: That sounds accurate.
>
> [DEFENSE COUNSEL]: There is no way to clarify that without just making the damage worse. The State well knows this man has been in jail numerous times. A patrol deputy is not -- at the north end of the county is certainly not going to be somebody working at the desk greeting visitors coming in at the jail. The clear implication is that Prentis Venzant has been in jail before, and it's improper, it's extremely prejudicial, it takes away his right to be tried without, you know, any background information of prior arrests while we're at the guilt stage of the trial. It's actually a violation of his constitutional rights to be tried only on the charges that are currently being presented against him. And I would ask that the jury be instructed to disregard that last comment. Even at that, I'm not sure it is adequate, and I would also ask for a mistrial on it.
>
> THE COURT: Okay. Response?

[STATE'S COUNSEL]: Well, Judge, of course the State did not intentionally elicit that response from the officer, and as the record will reflect and we request, that maybe a limiting instruction, a request to disregard. It was not an actual offense. It is not an extraneous offense. It was a little vague. If the officer said he recognized him from a specific offense that he had committed earlier, that would have been an issue. But the fact that he knows him from working at the jail, again, as the Court explained earlier on, it could be visitation of a loved one. For all they know, he could be a deputy. There's many different explanations for it. I would request a limiting instruction and a request by the Court to disregard the vague statement about the jail.

[DEFENSE COUNSEL]: I don't think anything -- anyone believes Prentis Venzant is a deputy for Galveston County. I think the inference is going to be very negative. Again, I would ask for the mistrial.

Failing that, at the very least we would need an instruction to disregard.

THE COURT: Okay. What would you like me to say in the instruction to disregard?

[DEFENSE COUNSEL]: To disregard the last statement by the sergeant.

THE COURT: Okay. What's your suggestion?

[STATE'S COUNSEL]: That's fine with us, Judge.

THE COURT: All right. I'm going to deny your motion for mistrial, and I will instruct the jury to disregard the last statement.

The court instructed the jury to disregard Gist's last statement, and then clarified with appellant's counsel that appellant was not requesting anything more specific.

Gist further testified, on cross-examination, that he did not find a purse, wallet, or any burglar's tools, "such as a screwdriver or some electronic device." Appellant was driving with the truck key, and Gist saw no physical signs—such as

6

damage to the steering column or the windows of the truck—to indicate it was stolen.

Officer J. Blackwell with the Galveston Police Department Auto Crimes Task Force testified that he investigated Heidelberg's report of her stolen truck. Upon investigation, Heidelberg learned that the truck had been impounded following a traffic stop of defendant-appellant, who was driving the truck. After Heidelberg told Blackwell that she did not know appellant, and did not give him permission to drive her pickup truck, Blackwell referred the case to the district attorney's office, which brought charges.

Officer A Healy testified to the circumstances surrounding his arrest of appellant. He had seen an active warrant for appellant's arrest for unauthorized use of a motor vehicle on a board in their office that displays pictures, names, dates of birth and general identifiers for Galveston fugitives. When he saw appellant, on September 10, 2014, walking down the street, Healy confirmed his warrant through dispatch and then arrested him.

## B. Jury Verdict and Trial Court's Judgment

The jury found appellant guilty of unauthorized use of a motor vehicle. Punishment was to the court, which heard evidence that appellant has 26 felony and 24 misdemeanor prior convictions, but that he was raised in a dangerous neighborhood and had never been offered help with his substance-abuse problems.

7

The court found two enhancements to be true and sentenced appellant to nine years' confinement.

## ISSUES ON APPEAL

Appellant raises two issues on appeal:

(1) "Whether there was sufficient evidence to support Venzant's conviction for unauthorized use of a motor vehicle when there was no evidence Venzant was aware that the owner had not given her consent."

(2) "Whether the trial court abused its discretion in denying Venzant's motion for a mistrial following a statement by a witness meant to inflame the minds of the jurors and an impossibility of the removing the damaging impression from the jurors' minds."

## SUFFICIENCY OF THE EVIDENCE

In appellant's first issue, he challenges the sufficiency of the evidence that he knew the complainant had not consented to his use of her truck.

### A. Applicable Law

§ 31.07. Unauthorized Use of a Vehicle

(a) A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner.

(b) An offense under this section is a state jail felony.

TEX. PENAL CODE ANN. § 31.07(a) (West 2011).

"[O]perating a vehicle is unlawful only if the accused is aware that the operation of the vehicle is without the owner's consent." *Battise v. State*, 264 S.W.3d 222, 227 (Tex. App.—Houston [1st Dist.] 2008) (citing *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *Edwards v. State*, 178 S.W.3d 139,

144 (Tex. App.–Houston [1st Dist.] 2005, no pet.)). "Testimony that the car owner did not give consent to operate his vehicle can be sufficient to support a finding that an appellant knew he did not have consent to operate the vehicle." *Id.* (citing *McQueen*, 781 S.W.2d at 604–05; *Edwards*, 178 S.W.3d at 145).

## B. Standard of Review

"When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt." *Jackson v. State*, 483 S.W.3d 78 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence)). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). The jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination."). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton*, 235 S.W.3d at 778). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**C. Analysis**

Appellant argues that there was insufficient evidence to prove that he "was aware that the owner did not consent to his use of the vehicle" and that there "was no circumstantial evidence suggesting appellant knew that it was stolen." He

10

contends that the only evidence the State presented was that Heidelberg did not give anyone permission to use her vehicle. According to appellant, under this Court's prior cases, that evidence is not enough to sufficiently demonstrate his culpability:

> While other Texas appellate courts have held that "[t]estimony that a vehicle owner did not give consent to operate the vehicle *can* be sufficient to support a finding that the accused knew he did not have consent to operate the vehicle—*Rodriguez v. State*, No. 11-12-00346-CR (Tex. App.—Eastland Feb. 2, 2015, no pet.) (not designated for publication) (emphasis added)—this Court has not. Rather, this Court has held that "testimony that the car owner did not give anyone consent to use the vehicle, alone, without any indicia that the defendant was aware that the owner had not consented, was legally insufficient evidence of intent." *Edwards* [*v. State*], 178 S.W.3d. [139,] 145 [(Tex. App.—Houston [1st Dist.] 2005, no pet.)] (citing *Herbert* [*v. State*] 827 S.W.2d 507, [508–09 (Tex. App.—Houston [1st Dist.] 1992, no pet.)]. Venzant would argue that in his case there were no indicia that he was aware that the owner had not consented, therefore Heidelberg's testimony alone is insufficient to support his conviction.

We do not agree with appellant's characterization of the law or the record in this case. Appellant cites *Edwards* and *Herbert* for the proposition that a vehicle owner's testimony that he or she did not give another person permission to drive their vehicle is insufficient to support a conviction for unauthorized use of a motor vehicle. In *Edwards*, however, we recognized that *Herbert* was inconsistent with an earlier Court of Criminal Appeals' case rejecting this view:

> In *McQueen* [*v. State*, 781 S.W.2d 600 (Tex. Crim. App. 1989)], the Court of Criminal Appeals held that testimony that the car owner did not give anyone consent to operate his vehicle was sufficient to

11

support a finding that the defendant knew he did not have consent to operate the vehicle. *Id*. at 604–05. Without noting *McQueen*, this court, in a case decided three years later, held that testimony that the car owner did not give anyone consent to use the vehicle, alone, without any indicia that the defendant was aware that the owner had not consented, was legally insufficient evidence of intent. *See Herbert v. State*, 827 S.W.2d 507, 508–09 (Tex. App.—Houston [1st Dist.] 1992, no pet.).

*Edwards*, 178 S.W.3d at 145. Since *Herbert* was decided, we have expressly recognized *McQueen*'s holding that "[t]estimony that the car owner did not give consent to operate his vehicle can be sufficient to support a finding that an appellant knew he did not have consent to operate the vehicle." *Battise v. State*, 264 S.W.3d 222, 227 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (citing *McQueen*, 781 S.W.2d at 604–05). Circumstantial evidence can be used to prove a defendant was aware he or she lacked a vehicle owner's consent to operate a motor vehicle. *E.g.*, *Coleman v. State*, 802 S.W.2d 394, 395 (Tex. App.—Dallas 1990, no pet.).

In *White v. State*, we also distinguished *Herbert* by noting that the defendant in *Herbert* put on "uncontradicted evidence establishing a defense." 844 S.W.2d 929, 932 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). We cited *McQueen*'s again for the proposition that that testimony by the vehicle owner that he or she did not give the defendant permission to operate the vehicle was sufficient evidence that the defendant knew he lacked the owner's consent. *Id*.

Appellant emphasizes that there was nothing in the outward appearance of the truck—such as a broken window or steering column—to indicate it had been stolen. But we have rejected the argument that such evidence negates a finding that the defendant operated a vehicle knowing he lacked the consent of the vehicle's owner. *White*, 844 S.W.2d at 932 ("That nothing about the car's steering column, windows, or outward appearance in general indicated that it was stolen is not evidence that appellant did not operate the car knowing that he did not have the effective consent of the owner.").

Here, not only was there testimony from the owner of the truck that she had not given appellant (who she did not know) permission to drive the truck, but appellant also lied to Officer Gist, stating that his aunt owned the truck. Appellant's lie, coupled with Heidelberg's testimony that she did not know appellant or give him permission to drive her truck, is sufficient circumstantial evidence to support the jury's finding that appellant knew he lacked the owner's consent. *Cf. King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (false statements to cover up crime can indicate consciousness of guilt and is admissible to prove guilt).

We overrule appellant's first issue.

13

**MISTRIAL**

In his second issue, appellant argues that the trial court erred in denying his motion for a mistrial after Gist made a statement to the jury that another officer recognized appellant and his passenger from working at the jail.

**A. Applicable Law and Standard of Review**

"A mistrial is required only when the impropriety is 'clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors.'" *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). We review the trial court's refusal to grant a mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (citing *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003)).

**B. Analysis**

In response to a question by State's counsel asking him to describe what was going on at one point in a dash-cam video, Gist explained that he and Deputy Smitty were patting down appellant and his passenger for weapons before he let them go. Gist went on to volunteer that Smitty "actually recognized both of these individuals and conversed with them briefly because he worked in the jail at the Sheriff's Department for some time." Although the trial court instructed the jury to disregard Gist's statement, appellant argues that the harm was not curable

because "the State's witness stated clearly that [appellant] and his companion had been to jail." According to appellant, "[a]bsent Sergeant Gist's statement, it is unlikely appellant would have been convicted." Appellant concedes that the statement was not elicited by the State, but argues that it was not relevant to Gist's testimony, so it "can only be understood as an attempt calculated to inflame the minds of the jurors against" appellant.

It has long been the rule in Texas that a "witness's inadvertent reference to an extraneous offense is generally cured by a prompt instruction to disregard." *E.g.*, *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009); *Kipp v. State*, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994). "However, an instruction to disregard will not cure the error of improperly inserted evidence of an extraneous offense when that evidence establishes exactly what the State is trying to prove." *Stine v. State*, 300 S.W.3d 52, 59 (Tex. App.—Texarkana 2009, pet. dism'd). A mistrial should be granted only in cases where the "reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds." *Young*, 283 S.W.3d at 878.

We hold that the trial court did not abuse its discretion in denying appellant's motion for a mistrial. This situation is similar to the one presented in *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998). In *Rojas*, a Texas

15

Ranger responded to a question about whether he believed the version of events given by appellant in a confession by stating, "I believe she wanted him to move out. She knew because of his past anger, his past violence that that was the only way—." *Id.* This drew an objection and motion for mistrial, "because the comment was not responsive to the question, beyond any evidence presented at trial, prejudicial and inflammatory, and a violation of appellant's due process rights." *Id.* The trial court sustained the objection and instructed the jury to disregard, but denied appellant's motion for a mistrial. The Court of Criminal Appeals held that the trial court's denial of appellant's motion was not an abuse of discretion:

> In the instant case, [the trooper's] response reflects a misunderstanding of the question on the part of the witness which was not anticipated by the State. Also, [his] comment was not a concrete reference to an extraneous offense, but merely vague speculation. Due to defense counsel's timely objection, [he] was prevented from elaborating on the mentioned extraneous conduct. Moreover, the trial judge's prompt sustaining of counsel's objection conveyed the appropriate message that the witness's comment was not supported by the evidence and was not to be considered. Therefore, the trial judge's instruction to disregard cured any error and the judge did not abuse his discretion in overruling appellant's motion for mistrial.

*Id.* Here, similarly, Gist's comment about Smitty knowing appellant and his passenger from working at the jail was not purposefully elicited or anticipated by the State. Also, as in *Rojas*, it was not "a concrete reference to an extraneous offense." *Cf. Phillips v. State*, 130 S.W.3d 343, 348 (Tex. App.—Houston [14th

16

Dist.] 2004) (holding witness's statement that her sister "confessed to something" was not reference to specific extraneous offense and, in any event, any prejudicial effect was cured by instruction to disregard) *aff'd* 193 S.W.3d 904 (Tex. Crim. App. 2006). Finally, as in *Rojas*, the trial court here promptly sustained appellant's objection and instructed the jury to disregard.

Given that even references to a defendant committing a specific extraneous offense have been deemed curable with an instruction to disregard, Gist's statement here that did not refer to a specific extraneous offense was not "so clearly calculated to inflame the minds of the jury or . . . of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *see, e.g.*, *Stine*, 300 S.W.3d at 59 (trial court did not abuse its discretion by denying motion for mistrial in burglary of a habitation trial when witness stated that appellant stole items from Ace Hardware when they were shopping; trial court's sustaining objection and instructing jury to disregard was curative). "We generally presume the jury follows the trial court's instructions" to disregard. *Lusk v. State*, 82 S.W.3d 57, 61 (Tex. App.—Amarillo 2002, pet. ref'd) (citing *Waldo v. State*, 746 S.W.2d 750, 752–53 (Tex. Crim. App. 1988)). Appellant has not established otherwise here.

We overrule appellant's second point of error.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).