

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00014-CR

_____

BRANDON ENRIQUE DEJESUSLOPEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 485th District Court
Tarrant County, Texas
Trial Court No. 1754583R

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

A Tarrant County[1] jury convicted Brandon Enrique DeJesusLopez of four counts of aggravated sexual assault,[2] one count of family violence assault by occlusion,[3] and one count of continuous family violence.[4] DeJesusLopez was sentenced to thirty-five years' imprisonment for each aggravated sexual assault, ten years' imprisonment for the family violence assault, and ten years' imprisonment for the continuous family violence. On appeal, DeJesusLopez complains that the trial court erred because (1) it did not enter a finding that he was competent before he went to trial, (2) it failed to make an informal inquiry into his competency status during his trial, and (3) it did not conduct a thorough inquiry into whether there was a conflict of interest between DeJesusLopez and his trial counsel. Because we find that no competency finding was required before he went to trial, the trial court was not required to make an informal inquiry as to his competency at trial, and the trial court made an adequate investigation into any alleged conflict of interest, we will affirm the trial court's judgment.

## I.  Background

This case was first set for trial on October 17, 2022. During DeJesusLopez's arraignment before jury selection, he informed the trial court, "I take medication so I'm still a little drowsy,"

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]*See* TEX. PENAL CODE ANN. § 22.021(a)(1).

[3]*See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(B) (Supp.).

[4]*See* TEX. PENAL CODE ANN. § 25.11(a) (Supp.).

and he stated, "I'm here, but I'm not."  After the trial court noted that he had been able to follow directions even though he was drowsy, DeJesusLopez pled not guilty to the multiple charges against him and not true to the allegations of family violence, without incident.  The trial court qualified the potential jurors, and the State conducted its voir dire until the lunch recess.

After the court reconvened, DeJesusLopez's trial counsel informed the trial court that DeJesusLopez woke up at 3:00 a.m. to be transported to the court and that DeJesusLopez took medication to sleep and level his mood; counsel then asked the trial court for a continuance until the next day.  DeJesusLopez informed the trial court that he had taken Seroquel for post-traumatic stress disorder (PTSD), which made him drowsy and blurred his vision.  After the trial court noted that DeJesusLopez had acted appropriately and had been able to interact with the trial court, it denied his request for a continuance and sought to address issues that had arisen during the State's voir dire.  DeJesusLopez then interrupted and insisted, "I'm not here" and "I'm barely here."  The trial court asked his counsel whether he had been able to interact with DeJesusLopez, who responded that he had until they came back from lunch.

A discussion ensued between the trial court, the State, and defense counsel, after which defense counsel suggested a medical examination might be in order.  The trial court then recessed the trial, and two nurses examined DeJesusLopez and determined that he was oriented as to time and place and that he knew he was in court and on trial.  Upon inquiry, defense counsel acknowledged that he had not previously had any concerns that a mental illness or defect impaired DeJesusLopez's ability to assist in his defense, but that DeJesusLopez had just stated that "his schizophrenia was kicking up."  Because DeJesusLopez claimed to have PTSD and

3

schizophrenia, the trial court stayed the proceedings until the following morning and ordered another examination of him that evening.

The next morning, the trial court informed the State and defense counsel that Dr. Jim Womack had examined DeJesusLopez the previous evening and that "[Womack's] finding [was] that Mr. DeJesus Lopez [sic] [was] in fact incompetent."[5]  The trial court then granted a defense motion for mistrial and granted the State's motion to have DeJesusLopez examined by its expert in anticipation of a competency hearing.  Two days later, the trial court ordered a reexamination of DeJesusLopez by Womack because DeJesusLopez's initial interview "contained enough inconsistent comments and mental status performances to support the inference his overall picture was unreliable."

Womack reinterviewed DeJesusLopez on November 1, 2022, coupled the interview with psychometric testing, and filed his report on November 4, 2022.[6]  In his report, Dr. Womack noted that DeJesusLopez "had suggested . . . he had an unconfirmed history of Schizophrenia and PTSD."  Womack's report further stated, "[H]is description of the related symptoms reflected possible symptoms but not to the degree they would result in a formal diagnosis of either condition."  Based on his interview and psychometric testing, Womack deferred the diagnosis of any mental disorder.  Womack opined that DeJesusLopez was not, at that time, "suffering from a severe mental disease preventing him from having sufficient . . . ability to consult with his attorney with a reasonable degree of rational understanding or having a rational

---

[5]Womack's initial evaluation was apparently based solely on his interview with DeJesusLopez.

[6]Womack's report indicates that it is based on his evaluations of DeJesusLopez on October 17 and November 1, 2022.  No separate report from the October 17 evaluation appears in the record.

4

and factual understanding of his charge(s)" and that DeJesusLopez was "competent to stand trial."[7]

Dr. Womack observed that "[DeJesusLopez] also knew a defense attorney could not seek to be removed from a case based upon knowledge of their clients' guilt, but only if there was a *conflict of interest*." Womack opined that DeJesusLopez could "comport himself appropriately at trial" but was "at risk to become highly anxious at trial should he perceive things [were] not going in his favor."

The State's expert, Dr. Antoinette McGarrahan, examined DeJesusLopez on October 24, 2022, and filed her report on November 4, 2022. After detailing her examination of DeJesusLopez and his responses, McGarrahan opined that he did not have an intellectual disability and that, although he "appear[ed] to suffer from psychiatric issues," they were "adequately addressed with medication."[8] She also opined that, despite his psychiatric issues, DeJesusLopez had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and that he had "a factual and rational understanding of the proceedings against him."

The trial court did not hold a competency hearing after those reports were filed. Instead, it appears that the parties proceeded to prepare for a new trial setting. The trial began on November 28, 2022. Before his arraignment and outside the presence of the jury, DeJesusLopez complained to the trial court about his trial counsel not providing him with his civilian clothes

---

[7]Womack also detailed the factual bases of his opinion.

[8]McGarrahan diagnosed DeJesusLopez with "[u]nspecified mood disorder, currently treated with medication" and "[u]nspecified anxiety disorder, currently treated with medication."

5

for trial, not providing him the indictment before the October hearing, not reading him the entire indictment and witness list, and not enabling him to bond out. He also complained that his trial counsel was a former police officer, that his counsel told him that he had killed before, and that he did not feel safe with him as his lawyer. Trial counsel responded that he had told DeJesusLopez that he was not afraid of him and that he had a law enforcement background after DeJesusLopez threatened to knock his head off his shoulders but denied that he told DeJesusLopez that he had killed before. Trial counsel also informed the trial court of other disagreements they had over what DeJesusLopez was entitled to see. The trial court explained to DeJesusLopez that it was not its job to resolve whether he liked his trial counsel, that trial counsel had a duty to provide him an effective defense, and that the trial would proceed with that expectation.

As his arraignment began, DeJesusLopez lunged at his trial counsel and slapped him on the back and on both arms. DeJesusLopez then immediately stated,

> I felt like I had to, Bro. I had no choice, Man. I didn't want to. I didn't even go hard. I assaulted that man. It's a conflict of interest. I assaulted that man.
>
> I'm not going to let you take my life away. You going to fight me, you are going to be on my side, Bro. I assaulted that man. It's a conflict of interest.

After DeJesusLopez was placed in holdover, the trial court observed that, as he was being restrained, DeJesusLopez said he had assaulted his counsel and that that would result in a conflict of interest. When asked, defense counsel acknowledged that DeJesusLopez had expressed to him that he did not want the trial to go forward and that DeJesusLopez's actions indicated he thought he could delay the trial by creating a conflict in the court's presence. The

6

trial court concluded that DeJesusLopez would not get that relief. After he pled not guilty to all of the charges before voir dire, DeJesusLopez again asserted that he had a conflict of interest with his trial counsel as a result of the assault. The trial court disagreed.

On the second day of trial, DeJesusLopez had an exchange with the trial court outside the presence of the jury in which he brought up the possibility of being criminally charged with assaulting his attorney and argued that, since his attorney would be the victim in any such case, it was a conflict of interest for him to represent DeJesusLopez in this case. The trial court expressed its opinion that DeJesusLopez felt he could delay the trial by what happened.

Near the end of the third day of trial, and outside the presence of the jury, DeJesusLopez asserted his right to represent himself because he disagreed with his trial counsel's strategy. The trial court questioned him about his education and his knowledge of the law and cautioned him about the dangers of self-representation. After the trial court gave DeJesusLopez time to speak with his attorney, he advised the court that he wanted his counsel to continue representing him. On the fourth day of trial, DeJesusLopez made a comment while a witness was testifying, the trial court warned him not to speak or disrupt the proceedings, and DeJesusLopez apologized. During the lunch recess, the trial court explained that DeJesusLopez could talk to his attorney and told him he had been provided a pen and paper to write down any questions he had for his attorney. DeJesusLopez said that he was trying to keep notes in his head. Before the punishment phase of the trial, the trial court admonished DeJesusLopez regarding his right to remain silent and his right to testify. DeJesusLopez told the court:

> I would like to say it now on the record that I do fear for my safety going to trial
> with my attorney, especially with a conflict of interest. And I feel that there is

7

prejudicy [sic] in this venue, and if the prejudicy [sic] is too great and if it's possible for change of venue, but it just to be on the record, you know. . . . I just want to put that on the record that I do fear for my safety, and that's why I did assault my lawyer because I felt like I had no other choice.

## II. Neither a Finding of Competency Nor an Informal Inquiry Was Required

### A. Standard of Review

The principles of due process are violated if an incompetent person is put to trial. *Owens v. State*, 473 S.W.3d 812, 816 (Tex. Crim. App. 2015). "A defendant is presumed competent to stand trial unless proved incompetent by a preponderance of the evidence." *Stine v. State*, 300 S.W.3d 52, 60 (Tex. App.—Texarkana 2009, pet. dism'd) (citing TEX. CODE CRIM. PROC. ANN. art. 46B.003(b)). To prove a defendant is incompetent to stand trial, it must be shown that the defendant "does not have: (1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a).

"Procedurally, a trial court employs two steps for making competency determinations before it may ultimately conclude that a defendant is incompetent to stand trial." *Alhadad v. State*, No. 02-22-00201-CR, 2023 WL 4940621, at *9 (Tex. App.—Fort Worth Aug. 3, 2023, no pet. h.) (mem. op.) (quoting *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018)). "The first step is an informal inquiry, and the second step is a formal competency trial." *Id.* (citing *Boyett*, 545 S.W.3d at 563). "A formal competency trial is required if, after the informal-inquiry stage, the trial court determines that 'there is more than a scintilla of evidence that would support a rational finding of fact that the accused is incompetent to stand trial.'" *Id.* (quoting *Turner v.*

8

*State*, 422 S.W.3d 676, 696 (Tex. Crim. App. 2013); TEX. CODE CRIM. PROC. ANN. art. 46B.005).

"We review challenges to the adequacy of a trial court's informal competency inquiry, and its findings following such an inquiry, for an abuse of discretion." *Id.* at \*10 (citing *Luna v. State*, 268 S.W.3d 594, 600 (Tex. Crim. App. 2008)). For our determination, "[w]e review the totality of the facts surrounding the trial court's decision on the issue of competency." *Stine*, 300 S.W.3d at 60 (citing *Gray v. State*, 257 S.W.3d 825, 827 (Tex. App.—Texarkana 2008, pet. ref'd)).

### B. The Informal Inquiry

"The trial court's duty to informally inquire into the issue of a defendant's competency is triggered when it receives information 'suggesting that the defendant may be incompetent to stand trial.'" *Alhadad*, 2023 WL 4940621, at \*10 (quoting TEX. CODE CRIM. PROC. ANN. art. 46B.004(a), (c)). "Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 46B.004(a)). When the trial court receives such suggestion, it "shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 46B.004(c)). "In conducting an informal inquiry, the trial court may 'appoint one or more disinterested experts to . . . examine the defendant and report to the court on the competency or incompetency of the defendant.'" *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 46B.021(a)(1)).

9

In its informal inquiry, "[a] trial court is not required to follow specific procedures." *Id.* (citing *George v. State*, 446 S.W.3d 490, 501 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)).

"With respect to the evidentiary standard that must be met at the informal inquiry stage, a court must focus on three matters." *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). "First, . . . whether there is 'some evidence' of incompetency to stand trial." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 46B.004(c)). "This 'some evidence' standard requires only that there be 'more than none or a scintilla [of evidence] that rationally may lead to a conclusion of incompetency.'" *Alhadad*, 2023 WL 4940621, at *11 (quoting *Turner*, 422 S.W.3d at 692). "Second, a trial court must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency." *Id.* (quoting *Boyett*, 545 S.W.3d at 564).

> And third, the evidence must be such that "it may rationally be inferred *not only* 1) that the defendant suffers some degree of debilitating mental illness, and that 2) he obstinately refuses to cooperate with counsel to his own apparent detriment, *but also* that 3) his mental illness is what fuels his obstinacy."

*Id.* (quoting *Boyett*, 545 S.W.3d at 564).

> "Thus, it is not enough to present evidence of either a defendant's mental illness alone or his refusal to cooperate with counsel—rather, there must be some evidence indicating that the defendant's refusal to rationally engage with counsel is caused by his mental illness" before the trial court is required to hold a competency trial.

*Id.* (quoting *Boyett*, 545 S.W.3d at 564).

## C.    Analysis

In his first issue, DeJesusLopez points to the trial court's statement at the October hearing—that Womack had found him to be incompetent—to assert that the trial court made a

10

finding that he was incompetent[9] and that, therefore, the trial court erred when it later tried DeJesusLopez without first finding him competent. In his second issue, DeJesusLopez contends that the trial court erred by not conducting an informal inquiry during trial.

As set forth above, before a trial court can ultimately make a ruling that a defendant is incompetent to stand trial, it must both make an informal inquiry and, except in circumstances not applicable here,[10] hold a formal competency trial. *Alhadad*, 2023 WL 4940621, at *9. It is uncontested that no formal competency trial was held in this case. As a result, the trial court could not make a determination of incompetency.

In the informal inquiry stage, the trial court only determines whether "evidence exists to support a finding of incompetency." TEX. CODE CRIM. PROC. ANN. art. 46B.004(d). The record in this case shows that the trial court was engaged in an informal inquiry when it appointed Dr. Womack to examine DeJesusLopez on the evening of October 17. Womack gave the trial court his preliminary opinion regarding DeJesusLopez's competency to stand trial sometime between the evening of October 17 and the morning of October 18, and the trial court notified the parties of that opinion on October 18. However, the trial court did not discuss any evidentiary facts that supported Womack's opinion. Within two days, Womack questioned his conclusion because of the inconsistencies in DeJesusLopez's interview comments and mental status performance and requested that the trial court approve an additional interview and testing.

---

[9]DeJesusLopez also points to a document entitled "CERTIFICATE OF PROCEEDINGS" dated October 18, 2022, that included a handwritten note stating, "Deft found to be incompetent; Court grants defense oral motion for mistrial," and several documents entitled "**DISCHARGE OF JURY AFTER RECEIVING CHARGE OF COURT**" of the same date stating that the reason for discharge was "DEFENDANT FOUND TO BE INCOMPETENT," all of which were signed by the trial court.

[10]*See* TEX. CODE CRIM. PROC. ANN. art 46B.005(c).

11

Womack's final conclusion, contrary to his preliminary opinion, and supported by evidentiary facts, was that DeJesusLopez was competent to stand trial. As previously seen, Dr. McGarrahan came to the same conclusion.

Because the trial court did not have Dr. Womack's final report, we conclude that any ruling that the trial court made on October 18 was, at best, a preliminary ruling that there appeared to be evidence that supported a finding of incompetence. Consequently, since the trial court did not make an ultimate determination that DeJesusLopez was incompetent to stand trial, no subsequent finding of competency was required before he went to trial. We overrule this issue.

DeJesusLopez also asserts that the trial court erred by not conducting an informal inquiry into his competency during his November trial.[11] He does not contest that neither he, nor his trial counsel, nor the State suggested that he was incompetent to stand trial. Rather, he contends that, based on his conduct at trial, the trial court should have conducted an informal inquiry.

"A suggestion of incompetency is the threshold requirement for an informal inquiry. . . and may consist solely of a representation from any credible source that the defendant may be incompetent." TEX. CODE CRIM. PROC. ANN. art. 46B.004(c-1). In the absence of such a representation, "[e]vidence suggesting the need for an informal inquiry may be based on

---

[11]To the extent DeJesusLopez complains that the trial court did not conduct an informal inquiry during and after the October 17 hearing, we have determined, and the record shows, that the trial court conducted an informal inquiry that was concluded with the filing of Womack's and McGarrahan's reports. That informal inquiry established that there was no evidence that indicated that any refusal by DeJesusLopez to rationally engage with his counsel was caused by his mental illness. Therefore, we address only his assertions regarding the trial that began on November 28.

12

observations made in relation to one or more of the factors described by Article 46B.024[12] or on any other indication that the defendant is incompetent within the meaning of Article 46B.003.[13]" *Id.*

The only arguably bizarre behavior that DeJesusLopez cites in his brief was the slapping incident during his arraignment. The record showed that he slapped his attorney shortly after the trial court informed him that, despite any difference he had with trial counsel, the trial would proceed. Further, after slapping his trial counsel, DeJesusLopez immediately explained that he did not know what else to do and that he had not "go[ne] hard" after his counsel, but that he "assaulted that man," and claimed it was a conflict of interest. Upon questioning by the trial

---

[12]Under Article 46B.024, these factors include:

> (1)    the capacity of the defendant during criminal proceedings to:
> (A)    rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings;
> (B)    disclose to counsel pertinent facts, events, and states of mind;
> (C)    engage in a reasoned choice of legal strategies and options;
> (D)    understand the adversarial nature of criminal proceedings;
> (E)    exhibit appropriate courtroom behavior; and
> (F)    testify;
> (2)    . . . whether the defendant:
> (A)    is a person with mental illness; or
> (B)    is a person with an intellectual disability;
> . . . .
> (4)    the degree of impairment resulting from the mental illness or intellectual disability, if existent, and the specific impact on the defendant's capacity to engage with counsel in a reasonable and rational manner; and
> (5)    if the defendant is taking psychoactive or other medication:
> (A)    whether the medication is necessary to maintain the defendant's competency; and
> (B)    the effect, if any, of the medication on the defendant's appearance, demeanor, or ability to participate in the proceedings.

TEX. CODE CRIM. PROC. ANN. art 46B.024.

[13]"A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. ANN. art 46B.003(a).

court, his counsel acknowledged that DeJesusLopez told him that he did not want the trial to go forward and indicated that he would take some action to cause a conflict of interest. As the record also showed, at several points during the trial, DeJesusLopez questioned why his assault on his counsel did not raise a conflict of interest, and, prior to the punishment hearing, DeJesusLopez made a statement that reasonably could be interpreted by the trial court that he assaulted his trial counsel in order to create a conflict of interest. Thus, rather than being indicative of a serious mental disorder, DeJesusLopez's slapping of his trial counsel could reasonably be seen as a calculated act performed for the purpose of delaying the trial.

DeJesusLopez cites four other instances during the trial as evidence of bizarre or unusual behavior. In the first instance, he asked to speak to the trial court during the reading of the charges against him. The trial court reminded him to not speak during the arraignment, and he complied with the court's instruction. Another instance occurred before trial began on the second day of trial, in which DeJesusLopez asked the trial court several questions, including whether the incident with his trial counsel would result in charges and why that was not a conflict of interest. The exchange showed that he had a rational grasp of the possible consequences of his actions and of the possible effect on his trial. The record showed that, in the third instance cited, DeJesusLopez made an innocuous comment during the questioning of a witness, was warned by the trial court not to disrupt the proceedings, and then apologized. Shortly thereafter, the jury was excused for lunch, and the trial court and DeJesusLopez had a rational exchange.

14

In the fourth instance cited, DeJesusLopez asserted his right to represent himself because he disagreed with his trial counsel's strategy. After being cautioned by the trial court and consulting with his attorney, DeJesusLopez chose to remain being represented by his trial counsel. Nothing in that exchange indicated that DeJesusLopez's behavior was bizarre or irrational. Rather, he exhibited a rational understanding of his right to self-representation and the dangers inherent in it.

This record does not show that DeJesusLopez exhibited any behavior during his trial relating to the factors described by Article 46B.024[14] or that indicated incompetency to stand trial under Article 46B.003. As a result, we find that the trial court did not abuse its discretion when it did not conduct an informal inquiry during the trial into DeJesusLopez's competency to stand trial. We overrule this issue.

## III.    Trial Court's Conflict of Interest Inquiry Was Adequate

DeJesusLopez also complains that the trial court erred when it did not conduct a thorough inquiry into whether he had a conflict of interest with his trial counsel. He argues that the trial court did not adequately inquire whether there was a conflict of interest even though (1) it witnessed the slapping incident, (2) the State filed a supplemental notice that it may introduce evidence of that incident, and (3) his counsel took the position that such a filing placed him in a conflict of interest with DeJesusLopez. We disagree.

---

[14]We recognize that, before DeJesusLopez's trial, Dr. McGarrahan diagnosed him with two mental disorders. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.024(2)(a). However, she also noted that they were "adequately addressed with medication" that, despite his psychiatric issues, he had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and that he had "a factual and rational understanding of the proceedings against him." *See* TEX. CODE CRIM. PROC. ANN. art 46B.024(3), (4). During his trial, DeJesus Lopez did not exhibit any behavior that contradicted McGarrahan's findings.

15

**A.    Background**

We have previously set forth the circumstances surrounding and leading up to the slapping incident, DeJesusLopez's remarks afterwards, and the trial court's inquiry into the possible conflict of interest arising from it.  Later that day, the State filed a supplemental notice of its intent to introduce the incident as evidence of an extraneous crime, wrong, or bad act.  Before trial resumed the next day, the State notified the trial court that it would not offer evidence of the incident or of any statement made about the incident in either the guilt/innocence or punishment phases of the trial.  At the trial court's suggestion, the State also made an oral motion in limine regarding that evidence.  The trial court then asked defense counsel for his position.  Counsel responded that, after the incident occurred, it had been his understanding that it would be treated in a separate proceeding if charges were filed, so they proceeded on the basis that there was no conflict.  However, with the addition of the incident to the notice and the addition of two witnesses to the incident on the State's witness list, he now felt he had a conflict of interest since he was the alleged victim and would be a witness in this trial.  The trial court noted that it had observed the communication and cooperation between DeJesusLopez and trial counsel, that trial counsel had been effective in his defense of DeJesusLopez, and that the State's offer of a motion in limine and its risk of a mistrial if evidence of the incident were introduced removed the incident from being a part of this case.  For those reasons, the trial court found that there was no conflict of interest.

16

## B.    Standard of Review

"An attorney's conflict of interest may result in the denial of a defendant's right to effective assistance of counsel." *Mason v. State*, 598 S.W.3d 755, 787 (Tex. App.—Fort Worth 2020, pet. granted) (citing *Acosta v. State*, 233 S.W.3d 349, 352–53 (Tex. Crim. App. 2007)). "When the appellant or his attorney has brought a potential conflict of interest to the attention of the trial court, the Supreme Court has said that the trial court has an obligation to investigate and determine 'whether the risk of the conflict of interest is too remote to warrant separate counsel.'" *Routier v. State*, 112 S.W.3d 554, 581 (Tex. Crim. App. 2003) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978)). Once a possible conflict of interest is brought to its attention, the trial court must "at least take adequate steps to ascertain whether the risk of the conflict of interest is too remote to warrant remedial action." *Dunn v. State*, 819 S.W.2d 510, 519 (Tex. Crim. App. 1991) (citing *Holloway*, 435 U.S. at 484).

"[I]n evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with [the accused's] lawyer as such.'" *Orgo v. State*, 557 S.W.3d 858, 861 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (alterations in original) (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)). "[T]he essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom [the defendant] prefers." *Id.* (alterations in original) (quoting *Wheat*, 486 U.S. at 159). "Moreover, a defendant should not be permitted to manipulate her right to counsel in order to throw the trial process into disarray." *Id.* (citing *King v. State*, 29 S.W.3d 556, 565–66 (Tex. Crim. App. 2000)).

17

## C.    Analysis

The record shows that, before the slapping incident, the trial court patiently listened to all of DeJesusLopez's complaints regarding his trial counsel, questioned trial counsel on the matters, and explained to DeJesusLopez that, even if he did not like and had disagreements with his trial counsel, the trial would proceed with the expectation that counsel would provide him with effective representation.    Shortly thereafter, DeJesusLopez slapped his trial counsel, asserted that he assaulted him, and claimed that it was a conflict of interest.

Considering the context, the trial court suspected that DeJesusLopez was attempting to create a conflict of interest to delay his trial.  The trial court investigated whether there were any prior communications with trial counsel to that effect.  Based on trial counsel's answers, the trial court concluded that DeJesusLopez's conduct showed that he attempted to create a conflict of interest to delay the trial.  *See King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000) ("However, the right to counsel may not be manipulated so as to obstruct the judicial process or interfere with the administration of justice."  (quoting *Green v. State*, 840 S.W.2d 394, 408 (Tex. Crim. App. 1992), *abrogated on other grounds by Trevino v. State*, 991 S.W.2d 849 (Tex. Crim. App. 1999)).  We find that the trial court made an adequate inquiry regarding DeJesusLopez's complaints about his attorney and adequately inquired into whether the slapping incident created a conflict of interest.

We also find that the trial court made an adequate inquiry when the State resurrected the potential conflict of interest by filing its notice that it would introduce evidence of the slapping incident.  In that inquiry, the State represented to the trial court and defense counsel that it would

18

not present any evidence regarding the incident, or statements made regarding it, at trial and presented an oral motion in limine in that regard. After hearing trial counsel's concerns regarding being a witness at trial, which would place him in conflict with his client, the trial court determined that any possibility that trial counsel would be a witness at the trial, and any potential conflict of interest raised thereby, had been resolved by the State's assurance, the motion in limine, and the trial court's assurance of a mistrial if evidence of the slapping incident were introduced.

Because the trial court adequately inquired into the alleged conflict of interest between DeJesusLopez and his trial counsel,[15] we overrule this issue.

## IV. Disposition

For the reasons stated, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:     August 10, 2023
Date Decided:       August 25, 2023

Do Not Publish

---

[15]In his brief, DeJesusLopez posits a number of questions that he contends a thorough investigation of a conflict of interest "would likely involve." However, he cites no authority in support of his contentions.

19